UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 19-CV-00349

| | | |
|---|---|---|
| JASMINE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRALEE AFFORDABLE PANTHER LLC | ) | **AMENDED COMPLAINT** |
| d/b/a DEERFIELD CROSSING | ) | |
| APARTMENTS and RAM PARTNERS, | ) | **(Class Action)** |
| LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jasmine Davis (hereafter "Plaintiff"), on behalf of herself and the proposed Classes, files this Amended Complaint against Defendants Tralee Affordable Panther LLC d/b/a Deerfield Crossing Apartments and RAM Partners, LLC (hereinafter "Defendants") and states:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff and others similarly situated due to unlawful and unfair debt collection practices engaged in by Defendants in their attempts to collect upon fees, penalties, and other improper charges, when such costs, attorneys' fees, charges, and amounts that are not owed and expressly prohibited.

2.     This case arises under the Residential Rental Agreements Act, N.C.G.S. § 42-38 *et seq.*, the North Carolina Debt Collection Act, N.C.G.S. § 75-50 *et seq.*, the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*, and North

Carolina common law.

3.     This is a class action on behalf of all tenants of any North Carolina apartment complex in which Defendants provide property management services, including but not limited to tenants of the apartment complex owned or managed by Defendants who during the relevant time period (a) received one or more communications from Defendants that violate North Carolina law as further set forth herein, and/or (b) have paid amounts in excess of those allowed by North Carolina law.

## JURISIDICTION AND VENUE

4.     The foregoing allegations are incorporated by reference and realleged herein.

5.     This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 42-44, N.C.G.S. § 25-1-305, N.C.G.S. §§ 75-16 and 56, N.C.G.S. § 1-75.4 and N.C.G.S. § 1-253.

6.     Jurisdiction also lies under § 1332(d)(2) ("CAFA"), because, as to the proposed classes, the amount in controversy exceeds $5,000,000, and the citizenship of the proposed classes of is at least minimally diverse from the Defendants.

7.     Venue lies in this Court under 28 U.S.C. § 1391(b)(2) in that Defendants maintain a place of business in this district, and have regularly engaged in business in this district.

## PARTIES

8.     The foregoing allegations are incorporated by reference and realleged herein.

9.     Plaintiff Jasmine Davis is a citizen and resident of Alamance County, North Carolina.

10.     At all relevant times, Ms. Davis leased an apartment from Defendants at the

2

Deerfield Crossing Apartments.

11.    Plaintiff is a  "tenant" subject to the protections of N.C.G.S. § 42-46.

12.    Plaintiff is a "consumer" as defined by N.C.G.S. § 75-50 *et seq*.

13.    Defendant Tralee Affordable Panther LLC d/b/a Deerfield Crossing Apartments ("Tralee") is, upon information and belief, a limited liability company organized under the laws of the state of Colorado that maintains a business in Alamance County, North Carolina and has regularly engaged in business in Alamance County, North Carolina.

14.    RAM Partners, LLC ("RAM") is, upon information and belief, a limited liability company organized and existing under the laws of the state of Georgia, maintains a business in Alamance County, North Carolina, and has regularly engaged in business in Alamance County, North Carolina.

15.    Defendant Tralee owns the Deerfield Trace apartments.

16.    Upon information and belief, Defendant RAM employs the persons and other entities to manage or operate the properties it managers in North Carolina, including the apartments at Deerfield Trace.

17.    Upon information and belief, Defendant RAM is the only property management company engaged in the work and business of Deerfield Trace and other apartment complexes, including Enclave at Rivergate, Sherwood Station, Skyhouse Raleigh, and Wildwood Apartments.

18.    With respect to all actions and decisions to this action, the Defendants have operated as a single entity.

19.    Upon information and belief, Defendant RAM controlled the actions at Deerfield

3

Trace and all other North Carolina properties in which it provides property management services.

20.     Defendants are each "landlords" as defined by N.C.G.S. §42-40(3).

21.     At all times relevant to this action, Defendants, in the ordinary course of business as the lessors of residential real property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1.

22.     Defendants are each "debt collectors" as defined by N.C.G.S. § 75-50.

<u>**GENERAL BACKGROUND**</u>

23.     The foregoing allegations are incorporated by reference and realleged herein.

24.     Upon information and belief, at all times relevant to the allegations contained herein, Defendants entered into lease agreements with North Carolina tenants that state in Paragraph 37 that, in addition to "the highest of ONE of the [Complaint-Filing Fee, Court Appearance Fee, and Second Trial Fee]", the tenant is also responsible for "any and all expenses, damages, and costs (*including reasonable attorney's fees and court costs*) arising out of or in any way relating to said default."  See **Exhibit 1** (emphasis in original).

25.     Attached as **Exhibit 1** is a true and accurate copy of the lease between Plaintiff and Defendants.

26.     Paragraph 37 of the lease agreements identify and describe three fees: a Complaint Filing Fee, a Court Appearance Fee, and a Second Trial Fee.

27.     In Paragraph 37(F), "Eviction Fees," it states: "If We file a summary ejectment against You (as described in Paragraph 37(c), You shall also be liable to Us for the highest ONE of whichever of the following fees apply:

         (1). Complaint Filing Fee. If You are in default of the lease, and if We file and serve

4

a summary ejectment complaint or a complaint for money owed (generally referred to as the "complaint") against You and if We elect to dismiss said complaint after entering into a settlement of said complaint with You, then You shall owe Us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the Rent, whichever is higher, and said Fee shall be in addition to late fees, court costs, reasonable attorneys' fees, and any other monetary damages or costs arising under the terms of this Agreement. If the Rent is subsidized by a government entity, the Complaint Filing Fee will be $15.00 or 5% of Your share of the Rent, whichever is higher. You also agree that We may require You to pay said Fee as Our condition of dismissing Our complaint.

28.    The Remainder of Paragraph 37(F) discusses the Court Appearance Fee and Second Trial Fee.

29.    The Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee are nearly identical to the fees described in N.C.G.S. § 42-46 (e) through (g).

30.    The "reasonable attorney's fees and court costs" under the lease are separate and apart from the Complaint Filing Fee, Court Appearance Fee, and Second Trial Fee.

31.    Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or about the 10th day of any given month to pay filing fees ("Filing Fees"), sheriff service fees ("Service Fees"), and attorneys' fees ("Attorneys' Fees") (collectively the Filing Fees, Service Fees, and Attorneys' Fees are referred to as the "Eviction Fees") (herein described as the ("Collection Policy").

32.    At all times relevant to the allegations contained herein, the Eviction Fees ranged from $191 to $201[1], plus an additional $30 for each additional tenant listed on the lease who receives service of process. The Eviction Fees are composed of a $96.00 Filing Fee, a $30.00

---

[1] Upon information and belief, at some point during the Relevant Time Period, Defendants' eviction attorneys increased their rates by $10 from $65.00 to $75.00.

5

Service Fee, and the remainder constitutes the Attorneys' Fee.

33.    Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or about the 10th day of any given month to pay to an additional Complaint Filing Fee of $15.00 or five percent (5%) of the monthly rent as part of their Collection Policy.

34.    Upon information and belief, at all times relevant to the allegations contained herein, as part of its Collection Policy, Defendants will post the Eviction Fees to a tenants' ledger before it has paid any out of pocket expenses.

35.    Upon information and belief, at all times relevant to the allegations contained herein, as part of its Collection Policy, Defendants will post the Eviction Fees before it has been charged any Filing Fees or Service Fees by the Court, and before it incurs any Attorneys' Fees.

36.    Upon information and belief, at all times relevant to the allegations contained herein, as part of its Collection Policy, Defendants will post the Eviction Fees which includes an attorney fee of either $65.00 or $75.00 even though tenants owe less than $500.00 to Defendants.

37.    Upon information and belief, at all times relevant to the allegations contained herein, as part of its Collection Policy, Defendants will post a Complaint Filing Fee to a tenant's ledger before it has filed a complaint for summary ejectment against the tenant.

38.    Upon information and belief, at all times relevant to the allegations contained herein, as part of its Collection Policy, Defendants will post a Complaint Filing Fee to a tenant's ledger before it has served a complaint for summary ejectment against the tenant.

6

39.     Upon information and belief, at all times relevant to the allegations contained herein, as part of its Collection Policy, Defendants will post a Complaint Filing Fee to a tenant's ledger before it has filed and served a complaint for summary ejectment against the tenant.

40.     Upon information and belief, as part of its Collection Policy, even if the rent is subsidized by a government entity, Defendants charge a tenant with a Complaint Filing Fee of 5% of the Rent, rather than the tenants' share of the rent as stated in its Lease.

41.     The "reasonable attorney's fees and court costs" described in the Lease are the same as Eviction Fees.

42.     Eviction Fees are additional fees separate and apart from the ones expressly authorized by N.C.G.S. § 42-46.[2]

43.     Instead, Eviction Fees constitute the "reasonable attorneys' fees, and any applicable court costs" described in the lease.

44.     Eviction Fees are fees set by the North Carolina Legislature for filing a complaint in summary ejectment and for service of process by a sheriff, and Defendants' attorneys' fees for filing an eviction.

45.     Upon information and belief, Defendants entered into a legal services agreement with a law firm that charges a flat fee per eviction.

46.     Upon information and belief, the legal services agreement limits the scope of the

---

[2] After the Honorable A. Graham Shirley, Wake County Superior Court Judge, held that the claiming of Eviction Fees was unlawful [**See Exhibit 13**], landlords petitioned and successfully altered the law. On June 25, 2018, S.L. 2018-50, entitled "An Act to Allow Landlords to Recover Out-of-Pocket Expenses in Summary Ejectment Cases" was enacted to amend N.C.G.S. § 42-46 ("the Act"). [See **Exhibit 14**]. The Act confirms that Defendants were not previously allowed to automatically charge tenants the Eviction Fees.

law firm's representation to only seeking possession of the apartment premises on behalf of Defendants and not any money owed.

47.     Upon information and belief, when a tenant fails to make a full and complete rental payment, or maintains a rental balance on their account ledger in excess of $0.00 after the 5th day of any given month, Defendants cause written letters or emails to be delivered to the tenant stating that Defendants will file a summary ejectment (eviction) lawsuit if he or she fails to make a complete rental payment and that once the eviction lawsuit is filed, the tenant will be charged and must pay all Eviction Fees (hereinafter "Initial Collection Letter").

48.     **Exhibit 2** and **Exhibit 3** are exemplars of an Initial Collection Letter.

49.     The "additional fees" referred to in the Initial Collection Letters are the same as the Eviction Fees as well as the Complaint Filing Fees described herein.

50.     Upon information and belief, pursuant to the Collection Policy, tenants owe, and are required to pay Eviction Fees even if: (a) the complaint in summary ejectment had not yet even been filed; (b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders the Eviction Fees to be assessed against Defendants.

51.     Upon information and belief, pursuant to the Collection Policy, tenants owe, and are required to pay Complaint Filing Fees even if: (a) the complaint in summary ejectment had not yet even been filed; (b) the complaint in summary ejectment has not been served; and (c) before the Complaint has been dismissed.

52.     Upon information and belief, each and every tenant of a property owned or managed by Defendants, or either of them, is subject to the Collection Policy.

53.     Upon information and belief, the Collection Policy is uniformly applied to each and every tenant that resides at any of the apartments owned or managed by Defendants.

8

54. Upon information and belief, the Collection Policy is mandatory throughout Defendants' properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

55. Upon information and belief, pursuant to the Collection Policy, when a tenant fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or around the 10th day of any given month, Defendants charge Eviction Fees and Complaint Filing Fees to the tenants' ledger before filing a complaint for summary ejectment as immediately due and owing. *See, e.g.,* **Exhibit 4**.

56. **Exhibit 4** is a true and accurate copy of Davis' ledger.

57. All the Eviction Fees are posted to a tenant's account ledger are in addition to, and separate from, the late fees and the fees specifically authorized by N.C.G.S. § 42-46(e)-(g), including the "Complaint-Filing Fee."

58. Upon information and belief, pursuant to the Collection Policy, Eviction Fees are charged to a tenant's account ledger prior to a North Carolina court awarding such amounts to Defendants, and sometimes before a complaint in summary ejectment is even filed.

59. At the time the Eviction Fees are charged to the account ledger as immediately due and owing, there is no guarantee that Defendants would ever be awarded such fees by a North Carolina court.

60. Defendants charge Eviction Fees to a tenant's ledger which includes a $96.00 filing fee that Defendants could never recover because it is not a recoverable cost pursuant to N.C.G.S. § 7A-305.

61. Upon information and belief, Defendants' practice of entering the Eviction Fees on a tenant's account ledger as immediately due and owing is mandatory and is consistently

9

applied for all of Defendants' North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

62. Upon information and belief, Defendants' practice of entering the Complaint Filing Fee on a tenant's account ledger as immediately due and owing is mandatory and is consistently applied for all of Defendants' North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

63. Upon information and belief, after causing the Eviction Fees and Complaint Filing Fees to be charged to the tenant's account ledger, and with no guarantee such amounts will ever be awarded by a North Carolina court, Defendants immediately begin attempting to collect upon the balance contained on the account ledger pursuant to its Collection Policy.

64. Pursuant to its Collection Policy, immediately after the Eviction Fees are entered onto a tenant's account ledger, Defendants cause additional written letters or emails to be delivered to the tenant stating that Eviction Fees are currently due and owing (hereinafter the "Post-Filing Collection Letters"). Upon information and belief, each and every tenant who was charged Eviction Fees were sent Post-Filing Collection Letters.

65. Exemplars of the Post-Filing Collection Letters are attached hereto as **Exhibits 5 and 6**.

66. In **Exhibit 6,** Defendants state to Plaintiff, "Court papers were filed on Monday, March 12, 2018."

67. In addition, in **Exhibit 6**, Defendants state: "THERE ARE NO EXCEPTIONS TO THE ADDITIONAL FEES THAT WERE ADDED TO YOUR ACCOUNT, HOWEVER

10

WE WILL DISMSS YOUR CASE WHEN YOU PAY YOUR BALANCE IN FULL.!)

68.     Upon information and belief, Defendants send these Post-Filing Collection Letters without any knowledge of their truth or accuracy in order to mislead and misrepresent the status of legal action to tenants.

69.     Indeed, in this instance, despite Defendants stating that "Court papers were filed on March 12, 2018," Defendants did not file a complaint against Plaintiff until March 14, 2018 and did not pay a filing or service fee until March 14, 2018.

70.     Attached as **Exhibit 7** is a true and accurate copy of the Complaint in Summary Ejectment filed by Defendants against Plaintiff on March 14, 2018 in Alamance County.

71.     Despite not filing the complaint until March 14, 2018 or paying any out-of-pocket expenses until, at the earliest, March 14, 2018, Defendants posted Eviction Fees of $201.00 to Plaintiff's ledger and the Complaint Filing Fee of $45.00 on March 12, 2018. See **Exhibit 4**.

72.     Upon information and belief, after the Eviction Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees were improperly assessed.

73.     Upon information and belief, after the Eviction Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and reconsider whether the attorneys' fees of $65.00 or $75.00 were improperly assessed or greater than fifteen percent (15%) of the amount owed by the tenant.

74.     Upon information and belief, after the Complaint Filing Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and reconsider whether the Complaint Filing Fees were improperly assessed before a Complaint had

been both filed and served.

75.    Upon information and belief, after the Complaint Filing Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will review and reconsider whether the Complaint Filing Fees were improperly assessed and whether the amount is greater than the 5% of the monthly rent actually owed by the tenant if the tenant's rent is subsidized by a government authority.

76.    Upon information and belief, even if a complaint in summary ejectment filed against a tenant is dismissed or possession is not awarded, there are no occasions in which Defendants will review and reconsider whether such Eviction Fees and Complaint Filing Fees were improperly assessed, even if a North Carolina magistrate judge assesses Eviction Fees and Complaint Filing Fees against Defendants.

77.    Upon information and belief, after the Eviction Fees and Complaint Filing Fees are entered onto a tenant's account ledger, there are no occasions in which Defendants will remove such Eviction Fees and Complaint Filing Fees from an individual tenant's account ledger.

78.    Plaintiff and Class Members did not enter into any settlement, written or otherwise, with Defendants.

79.    After a tenant makes a complete rental payment, Defendants file notices of voluntary dismissals without prejudice.

## DAVIS'S FACTS

80.    Davis leased an apartment from Defendants for an apartment at Deerfield Concord Pointe located at 600 Deerfield Trace, Apt. 1404, in Mebane, North Carolina 27302 ("Davis's Apartment") since approximately September 8, 2016.

12

81.     A true and accurate copy of one of Davis's lease is attached hereto as **Exhibit 1.**

82.     The Lease states in Paragraph 37 that, in addition to "the highest of ONE of the [Complaint-Filing Fee, Court Appearance Fee, and Second Trial Fee]", the tenant is also responsible for "any and all expenses, damages, and costs (*including reasonable attorney's fees and court costs*) arising out of or in any way relating to said default." *See* **Exhibit 1** (emphasis in original).

83.     In Paragraph 37(F), "Eviction Fees," it states: "If We file a summary ejectment against You (as described in Paragraph 37(c), You shall also be liable to Us for the highest ONE of whichever of the following fees apply:

> (1). Complaint Filing Fee. If You are in default of the lease, and if We file and serve a summary ejectment complaint or a complaint for money owed (generally referred to as the "complaint") against You and if We elect to dismiss said complaint after entering into a settlement of said complaint with You, then You shall owe Us a Complaint Filing Fee equal to $15.00 or five percent (5%) of the Rent, whichever is higher, and said Fee shall be in addition to late fees, court costs, reasonable attorneys' fees, and any other monetary damages or costs arising under the terms of this Agreement. If the Rent is subsidized by a government entity, the Complaint Filing Fee will be $15.00 or 5% of Your share of the Rent, whichever is higher. You also agree that We may require You to pay said Fee as Our condition of dismissing Our complaint.

84.     The Remainder of Paragraph 37(F) discusses the Court Appearance Fee and Second Trial Fee.

85.     Pursuant to the lease, Davis's total monthly rent for her Apartment was approximately $751 per month.

86.     Davis's rent was also subsidized by a government entity, identified on her ledger as the "Housing Authority", that contributed $545.00 per month to her rent. *See* **Exhibit 4**.

87.     Davis's portion of her rent was $206.00. *Id*.

13

88.     Each time Davis was late, she was charged a late fee of 5% of the rent pursuant to N.C.G.S. § 42-46(a). *Id.*

89.     Paragraph 3(A) of Davis's lease states, in relevant part, regarding the Late Fee:

However, should We choose to accept a late Rent payment received from You after the fifth (5th) calendar day of the month, You will also owe Us a late fee ("late fee") equal to $15.00 or five percent (5%) of the Rent, whichever is greater – or, where Your Rent is subsidized by the United States Department of Housing and Urban Development, by the United States Department of Agriculture, by a state agency, by a public housing authority, or by a local government, the late fee shall not exceed $15.00 or an amount equal to five percent (5%) of Your share of the Rent (*after deducting the value of the rent subsidy received*), whichever is greater.

90.     The "Housing Authority" identified on Davis' ledger constitutes either the United States Department of Housing and Urban Development, the United States Department of Agriculture, a state agency, a public housing authority, or a local government under the Lease.

91.     The amount contributed by the "Housing Authority" identified on Davis' ledger constitutes a subsidy under the Lease.

92.     Upon information and belief, Davis received an Initial Collection Letter and was charged a late fee of $15.00 pursuant to N.C.G.S. § 42-46(a) on numerous occasions, including on: October 6, 2016, September 6, 2017, December 6, 2017, January 8, 2018, March 6, 2018, April 6, 2018 and May 7, 2018. *See e.g.,* **Exhibits 2, 3, and 4.**

93.     The Initial Collection Letters threatened to charge additional fees if Davis did not make a complete rental payment by a certain date.

94.     Upon information and belief, all other similarly situated tenants of Defendants received an Initial Collection Letter substantially identical to the ones sent to Davis.

95.     The "additional fees" referred to in the Initial Collection Letters are the same as the Eviction Fees described herein as well as the Complaint Filing Fees.

14

96. The "attorney and filing charges" referred to in the Initial Collection Letters are the same as the Eviction Fees described herein.

97. Defendants were not entitled to receive Eviction Fees when it sent the Initial Collection Letters to Davis.

98. Defendants placed the Eviction Fees on Davis's ledger on multiple occasions. *See e.g.,* **Exhibit 4.**

99. Indeed, when they placed the Eviction Fees on Davis' ledger, Defendants assessed an Attorney Fee of $65.00 or $75.00 which was far in excess of what it could charge pursuant to N.C.G.S. § 42-46.

100. Defendants placed the Complaint Filing Fees on Davis's ledger on multiple occasions before they filed and served a complaint on her. *See e.g.,* **Exhibit 4.**

101. Indeed, when they placed the Complaint Filing Fees on Davis' ledger, Defendants assessed a Complaint Filing Fee of $45.00 which was far in excess of what it could charge pursuant to N.C.G.S. § 42-46(e) and their own leases because, if it had properly filed and served a complaint, it could only charge 5% of Davis' portion of the rent since it was government subsidized.

102. Instead, Defendants assessed an amount that was over four (4) times the amount that they could lawfully assess as a Complaint Filing Fee assuming Defendants had properly filed and served a complaint before placing this amount on Davis's ledger.

103. On January 1, 2018, rent of $206.00 for Davis's portion was added to her ledger, and rent from the housing authority of $545.00 was added to her ledger. *Id.*

104. On January 2, 2018, the housing authority paid its portion of the rent via check for $545.00.

15

105. However, when Davis was unable to timely pay her portion of $206.00 by January 5, 2018, on or about January 8, 2018, a late fee of $15.00 was added to Davis's ledger. *Id.*

106. On January 19, 2018, Eviction Fees in the amount of $191.00 were placed on Davis's account ledger. *Id.*

107. The Eviction Fees added on January 19, 2018 included an attorneys' fee of $65.00 at this time, $96.00 for a filing fee, and $30.00 for a service fees. *Id.*

108. On or about January 19, 2018 a complaint filing fee of $45.00 was also added to Davis's Ledger. *Id.*

109. In total, instead of owing only $206.00, Defendants now represented to Davis that she owed $456.70. *Id.*

110. However, at the time these Eviction Fees and Complaint Filing Fees were added to Davis's ledger, no complaint had been filed by Defendants and no one had served Davis with a copy of the complaint.

111. Indeed, at the time Defendants put the Eviction Fees on Davis's ledger, Defendants were not "out-of-pocket" any expenses and not permitted to recover any fees.

112. Despite posting an additional balance owed of $236.00 on January 19, 2018 representing that it was entitled to these Eviction Fees and Complaint Filing Fees as out of pocket expenses, Defendants did not file a complaint for summary ejectment until January 22, 2018. *See* **Exhibit 8**. Accordingly, Defendants were not charged by a court for Eviction Fees until January 22, 2018.

113. Despite posting an additional balance owed of $45.00 on January 19, 2018 representing that it was entitled to the Complaint Filing Fees, Defendants had not filed or served

16

a complaint for summary ejectment because it did not file the complaint until January 22, 2018. *Id*.

114.     At the earliest Defendants could have attempted to claim a Complaint Filing Fee was after January 25, 2018.

115.     However, even if Defendants had properly filed and served a complaint for summary ejectment, Defendants did not have authority to assess more than 5% of Davis' portion of her rent for a Complaint Filing Fee.

116.     Thus, at most, Defendants could assess a fee of $10.25, but, instead Defendants assessed a fee of over four (4) times that amount.

117.     As shown on **Exhibit 8**, Defendants asserted that the amount of rent unpaid was $205.70. Even though Defendants were not entitled to any attorneys' fee at the time Defendants posted the fee on Davis' ledger, the most Defendants could have charged her was $30.855 which is 15% of the amount owed.

118.     However, Defendants assessed an attorneys' fee of Davis of $65.00 more than twice what it was entitled to charge her.

119.     In total, even though it was not entitled to assess any Eviction Fees or Complaint Filing Fees, on January 19, 2018, Defendants assessed Eviction Fees and Complaint Filing Fees that were 114% greater than Davis' share of her monthly rent. *See* **Exhibit 4**.

120.     On February 5, 2018, Davis paid the amount owed for her January rent, her February rent, and an additional $205.00 because Defendants falsely represented that they were entitled to these additional amounts. *Id*.

121.     No settlement was entered into between Davis and Defendants.

122.     On February 6, 2018, Defendants filed a notice of voluntary dismissal without

17

prejudice. *See* **Exhibit 9**.

123.    On March 1, 2018, rent of $206.00 for Davis's portion was added to her ledger, and rent from the Housing Authority of $545.00 was added to her ledger. *See* **Exhibit 4**.

124.    On March 1, 2018, the Housing Authority paid its portion of the rent via check for $545.00.

125.    However, Davis was unable to timely pay her portion of $206.00 by March 5, 2018, on or about March 6, 2018, a late fee of $15.00 was added to Davis's ledger. *Id.*

126.    On March 12, 2018, Eviction Fees in the amount of $201.00 were placed on Davis's account ledger. *Id.*

127.    The Eviction Fees added on March 12, 2018 included an attorneys' fee of $75.00 at this time, $96.00 for a filing fee, and $30.00 for a service fee. *Id.*

128.    On or about March 12, 2018 a Complaint Filing Fee of $45.00 was also added to Davis's Ledger. *Id.*

129.    In total, instead of owing only $206.00, Defendants now represented to Davis that she owed $512.00. *Id.*

130.    However, at the time these Eviction Fees and Complaint Filing Fees were added to Davis's ledger, no complaint had been filed by Defendants and no one had served Davis with a copy of the complaint.

131.    Indeed, at the time Defendants put the Eviction Fees on Davis's ledger, it was not out-of-pocket any expenses and not permitted to recover any fees.

132.    Despite posting an additional balance owed of $246.00 on March 12, 2018 representing that it was entitled to these Eviction Fees and Complaint Filing Fees as out of pocket expenses, Defendants did not file a complaint for summary ejectment until March 14,

18

2018. *See* **Exhibits 4 and 7**.

133.     Despite posting an additional balance owed of $246.00 on March 12 2018 representing that it was entitled to these Eviction Fees and Complaint Filing Fees, Defendants were not charged a Filing Fee or Service Fee by a court until March 14, 2018. *Id*.

134.      Despite posting an additional balance owed of $45.00 on March 12, 2018 representing that it was entitled to the Complaint Filing Fees, Defendants had not filed or served a complaint for summary ejectment because it did not file the complaint until March 14, 2018. *Id*.

135.     At the earliest Defendants could have attempted to claim a Complaint Filing Fee was after March 16, 2018.

136.     However, even if Defendants had properly filed and served a complaint for summary ejectment, Defendants did not have authority to assess more than 5% of Davis' portion of her rent for a Complaint Filing Fee.

137.     Thus, at most, Defendants could assess a fee of $10.25, but, instead Defendants assessed a fee of over four (4) times that amount.

138.     As shown on **Exhibit 7**, Defendants asserted that the amount of rent unpaid was $206.00

139.     Therefore, even though Defendants were not entitled to any attorneys' fee at the time Defendants posted the fee on Davis' ledger, at most Defendants could have charged her was $30.90 which is 15% of the amount owed.

140.     However, Defendants assessed an attorneys' fee to Davis of $75.00, or more than twice what it was entitled to charge her.

141.     In total, even though it was not entitled to assess any Eviction Fees or Complaint

Filing Fees, on March 12, 2018, Defendants assessed Eviction Fees and Complaint Filing Fees that were 119% greater than Davis' share of her monthly rent. *See* **Exhibit 4**.

142.    On March 16, 2018, Davis paid the amount owed for her March rent.

143.    No settlement was entered into between Davis and Defendants.

144.    On March 27, 2018, Defendants filed a notice of voluntary dismissal without prejudice. *See* **Exhibit 10**.

145.    On numerous occasions, Defendants assessed fees against Davis which they were not entitled.

146.    Attached as **Exhibit 11** is a true and accurate copy of the court file for pleadings Defendants filed against Davis in May 2018.

147.    Attached as **Exhibit 12** is a true and accurate copy of the court file for pleadings Defendants filed against Davis in September 2018.

148.    Defendants only filed notices of voluntary dismissals without prejudice each time Davis made payments.

149.    The "Eviction / Warrant" fees in the amount of either $191 or $201 present  on Davis's ledger are the same fees identified in the Initial Collection Letter and are the same as the Eviction Fees described herein.

150.    Upon information and belief, each time Eviction Fees were placed on Davis's ledger, Defendants had not paid the $96 filing fee for filing the complaint in summary ejectment nor had they paid the $30 service fee.

151.    Upon information and belief, each time the Eviction Fees were placed on Davis's ledger, Defendants were not entitled to claim either $65.00 or $75.00 in attorneys' fees.

152.    Upon information and belief, at the time the Eviction Fees were placed on

Davis's ledger, no hearing had been held and no attorney had appeared in Court to evict Davis and/or seek the award of Eviction Fees.

153.    Upon information and belief, at the time the Eviction Fees were placed on Davis's ledger, no attorney had been hired by Defendants to collect any debt.

154.    Upon information and belief, it was always after the Eviction Fees were placed on Davis's, or any other  tenant's ledger, that Defendants filed Complaints for Summary Ejectment in the Small Claims Division of Alamance County General Court of Justice, alleging that Davis or some other tenant owed past due rent.

155.    Upon information and belief, at the time the Complaint Filing Fees were placed on Davis's ledger, the complaint had not been filed and served on Davis.

156.    Each time Defendants placed the Eviction Fees on Davis's account ledger, Defendants caused Post-Filing Collection Letters to be sent to her.

157.    The amounts included and/or referenced in the Post-Filing Collection Letters are Eviction Fees and Complaint Filing Fees to which Defendants were not entitled.

158.    The $45 "Eviction / Warrant" fee that Defendants posted to Davis's ledger is the same fee as the "Complaint Filing Fee" listed in N.C.G.S. § 42-46(e).

159.    Upon information and belief, each time Defendants filed a Complaint in Summary Ejectment in Alamance County General Court of Justice, Defendants wrote that they "hereby omit[] any claim for rents or damages and is seeking possession of the premises only. [Defendants] reserve[] the right to seek any monetary damages in a separate civil action." *See, e.g*., **Exhibits 7.**

160.    Upon information and belief, the Eviction Fees were placed on Davis's ledger before any of the Complaints in Summary Ejectment action were served.

21

161.     Upon information and belief, the court never assessed the costs of the action against Davis.

162.     Even though the court did not tax the costs of the action against Davis, Defendants still required that Davis pay the Eviction Fees.

163.     Even though at most it could charge a reasonable attorneys' fee of only 15% of the amount owed, Defendants assessed fees greatly in excess of what they could ever recover even if they had followed the proper procedures.

164.     Davis paid the Eviction Fees when they were not owed or awarded by any court.

165.     Upon information and belief, Defendants only filed notices of voluntary dismissals without prejudice.

166.     By filing notices of voluntary dismissals without prejudice, Defendants were not the prevailing party.

167.     Upon information and belief, no court awarded Defendants with Eviction Fees against Davis in any summary ejectment case or thereafter.

168.     Upon information and belief, Defendants only filed notices of voluntary dismissals without prejudice when its tenants pay Eviction Fees prior to obtaining a judgment for possession.

169.     At no point did a North Carolina judge award any portion of the Eviction Fees to Defendants.

170.     At no point did a North Carolina judge assess any portion of the Eviction Fees against Davis.

171.     At no point did a North Carolina judge assess any portion of Defendants' attorneys' fees against Davis.

172.    At no point did a North Carolina judge assert that Defendants could recover more than 15% of the amount owed by Davis as an attorney fee.

173.    In essence Defendants assessed an attorneys' fee that amounted to 36% of the amount owed.

174.    Thirty-six percent of the amount owed is not a reasonable attorney fee under applicable North Carolina statutes.

175.    Even though a North Carolina court never awarded any portion of the Eviction Fees to Defendants, and in fact assessed costs against Defendants, Defendants never refunded any portion of the Eviction Fees to Defendants.

176.    At no point did Defendants employ a law firm to collect upon any debt alleged to be owed by Davis.

177.    Upon information and belief, neither Davis nor any tenant settle any claim against Defendants or give up any legal rights by paying the Eviction Fees.

## COMMON CLASS ALLEGATIONS

178.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

179.    Pursuant to Rule 23 of the Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of the five classes:


**The Initial Collection Letter Class:**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through June 25, 2018 (b) resided in one of the apartments owned or managed by Defendants' in North Carolina (c) were sent Initial Collection Letters that (d) threatened to charge Eviction Fees in order to dismiss the eviction action.

23

**The Post-Filing Collection Letters Class:**

> All tenants of Defendant's Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through June 25, 2018 (b) who resided in one of the apartments owned or managed by Defendant's in North Carolina and (c) were sent Post-Filing Collection Letters that (d) claimed that Eviction Fees were owed by the tenant prior to a North Carolina court awarding such Eviction Fees to Defendant.

**The Fee Class:**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through June 25, 2018 (b) who resided in one of the apartments owned or managed by Defendants' in North Carolina and (c) were charged Eviction Fees prior to a North Carolina court awarding such Eviction Fees to Defendants or before Defendants had actually paid the Eviction Fees.

**The Attorney's Fee Class:**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through the present (b) who resided in one of the apartments owned or managed by Defendants' in North Carolina and (c) were charged/assessed Attorneys' Fees in excess of 15% of the amount owed.

**The Complaint Filing Fee Class:**

> All tenants of Defendants' Apartments in North Carolina who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint through the present (b) who resided in one of the apartments owned or managed by Defendants' in North Carolina and (c) were charged/assessed a Complaint Filing Fee before Defendants had filed and served a complaint for summary ejectment.

180. Excluded from the classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants has a

24

controlling interest in Defendants and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the classes.

181.  *Commonality*: All questions concerning Defendants' Collection Policy, chaging of Eviction Fees and Complaint Filing Fees, and sending the Initial Collection Letters and Post-Filing Collection Letters are common.

182.  Whether Defendants may lawfully charge Eviction Fees and Complaint Filing Fees is a question that is common for all members of the classes.

183.  Each and every member of the proposed Classes are subject to Defendants' policies and procedures.

184.  Further, the answer to this question will drive other answers in the litigation, including whether the Initial Collection Letters and Post-Filing Collection Letters are lawful and whether any portion of Defendants' lease is void and unenforceable.

185.  *Predominance:* Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice and policy of charging tenants Eviction Fees after the 10th day of the month as described herein. These questions include, but are not limited to:

  a.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* in that Defendants represented that a specific amount of debt may be increased by Eviction Fees prior to the award of such amounts by a North Carolina court;

25

b.  Whether Defendants' pattern, practice, and policy of utilizing the Initial Collection Letters violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* by falsely representing Defendants' ability to collect Eviction Fees;

c.  Whether Defendants' pattern, practice, and policy of utilizing the Post-Filing Collection Letters violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* by falsely representing Defendants' ability to collect Eviction Fees;

d.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees was illegal under N.C.G.S. §§ 42-46 and 75-50 *et seq.*;

e.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Complaint Filing Fees was illegal under N.C.G.S. §§ 42-46 and 75-50 *et seq.*;

f.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees violated N.C.G.S. § 75-1.1 *et seq.*;

g.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Complaint Filing Fees violated N.C.G.S. § 75-1.1 *et seq.*;

h.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. § 75-1.1 *et seq.* in that Defendants refused to refund Eviction Fees after a Court taxed the cost of the action against Defendants.

i.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Attorneys' Fees was in violation of N.C.G.S. §§ 6-21.2, 42-46, and 75-50 *et seq.* in that Defendants' attorneys were not collecting upon any debt or seeking in excess of 15% of the amount owed by the tenant;

26

j.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees constituted a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claimed Attorneys' Fees were due and owing despite the absence of any statutory authority granting such fees;

k.  Whether Defendants only file notice of voluntary dismissal without prejudice against Plaintiff and the Class members when they make payments;

l.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees constituted a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claimed Attorneys' Fees greater than 15% of the amount owed by the tenant were due and owing despite an explicit requirement that they could not collect any amounts greater than 15% of the amount owed by the tenant; and

m.  Whether any portion of Defendants' lease was void and unenforceable because it contains a fee for filing a complaint for summary ejectment and/or money owed other than the fees expressly authorized by N.C.G.S. § 42-46 (e) through (g).

186.  *Numerosity*: The Class members are so numerous that joinder of all is impractical.

187.  The names and addresses of the Class members are readily identifiable through the business records maintained by Defendants, and may be notified of the pendency of this action by published and/or mailed notice.

188.  Members of the classes include hundreds of present and former tenants of Defendants' Apartments who have been charged with Eviction Fees in violation of the law.

189.  *Typicality*: The claims of the Plaintiff are typical of the claims of the proposed classes and all are based on the same facts and legal theories, as all such claims arise out of Defendants' conduct in that Defendants had a specific policy of attempting to unlawfully collect debt from each member of the proposed classes Eviction Fees and Complaint Filing Fees following the expiration of the 5th day of the month.

190.  *Adequate Representation*: The Plaintiff is an adequate representatives of the classes in that the Plaintiff does not have antagonistic or conflicting claims with other members of the classes.

191.  Plaintiff has also retained counsel experienced in the prosecution of complex class actions and consumer litigation.

192.  Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action.

193.  Plaintiff is aware of her responsibilities to the putative classes and has accepted such responsibilities.

194.  *Superiority*: A class action is superior to all other available methods for fair and efficient adjudication of this controversy.

195.  Plaintiff anticipates no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

196.  Plaintiff anticipates no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will

magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

197.   Further, Defendants have acted and refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final injunctive and declaratory relief with respect to the classes as a whole.

**FIRST CAUSE OF ACTION:**
**Violation of the North Carolina Residential Rental Agreements Act**
**N.C.G.S. § 42-46 (2009)**
**(on behalf of all classes)**

198.   All paragraphs of this complaint are incorporated herein as if fully restated.

199.   Defendants' conduct as described above is subject to N.C.G.S. § 42-46 (2009) of the Residential Rental Agreements Act.

200.   N.C.G.S. § 42-46(e)-(h) specifically limits the amounts that can be charged to a tenant for evictions and when those amounts may be charged.

201.   Any amounts charged in excess of these limitations is against North Carolina's public policy and therefore void and unenforceable.

202.   The Eviction Fees charged by Defendants to Plaintiff and members of the Classes were separate from and in excess of the amount allowed under N.C.G.S. § 42-46 and constitute a violation of North Carolina law.

203.   The amount of Eviction Fees charged by Defendants to Plaintiff and other members of the Classes are in excess of the amounts allowed under N.C.G.S. § 42-46.

204.   In addition, N.C.G.S. § 42-46(e) specifically limits when a landlord can charge a Complaint Filing Fee to a tenant's ledger to only after a complaint for summary ejectment has been filed and served against the tenant.

29

205. By assessing and demanding a Complaint Filing Fee before Defendants had filed or served a complaint on a tenant, Defendants' actions constitute a violation of N.C.G.S. § 42-46(e).

206. As a proximate result of Defendants' conduct, Plaintiff and all members of the Classes were damaged and are entitled to recover all amounts of Eviction Fees and Complaint Filing Fees paid to Defendants in violation of N.C.G.S. § 42-46 (2009).

## SECOND CAUSE OF ACTION:
### Violation of the North Carolina Residential Rental Agreements Act
### N.C.G.S. § 42-46 (2018)
### (on behalf of all classes)

207. All paragraphs of this complaint are incorporated herein as if fully restated.

208. N.C.G.S. § 42-46(i) limits the timing for when a landlord is lawfully allowed to assess a tenant for Eviction Fees. In order to lawfully assess Eviction Fees under § 42-46(i), a landlord must have actually paid the Eviction Fees first before it can collect the fees from a tenant.

209. Defendants assessed Plaintiff and members of the Classes with Eviction Fees before Defendants actually paid the Eviction Fees.

210. In addition, N.C.G.S. § 42-46(i)(3) limits the amount a landlord could assess a tenant for an attorney fee. Under subsection (i)(3), a landlord may not charge an attorney fee in excess of fifteen percent (15%) of the amount owed by the tenant.

211. Contrary to § 42-46(i)(3), Defendants assessed Plaintiff and members of the Classes with an Attorney Fee in excess of fifteen percent (15%) of the amount owed.

212. As a proximate result of Defendants' conduct, Plaintiff and all members of the Classes were damaged and are entitled to recover all amounts of Eviction Fees paid to Defendants in violation of N.C.G.S. § 42-46 (2018).

30

## THIRD CAUSE OF ACTION
### Violation of North Carolina Debt Collection Act
### N.C.G.S. § 75-50, *et seq.*
### (on behalf of all classes)

213.    All paragraphs of this complaint are incorporated herein as if fully restated.

214.    Plaintiff and each member of the Classes are a "consumer," as that term is defined by N.C.G.S. § 75-50.

215.    The amount purportedly owed to Defendants by Plaintiff and each member of the proposed Classes is a "debt," as that term is defined by N.C.G.S. § 75-50.

216.    At all times relevant to this action, Defendants, in the ordinary course of business as lessors and managers of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

217.    Defendants, in seeking to recover past due rent, fees, and other charges, are "debt collectors" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

218.    Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

219.    Defendants are subject to the requirements of N.C.G.S. § 75-50 *et seq.*, that prohibits certain activities by debt collectors.

220.    The Initial Collection Letters violated N.C.G.S. § 75-50 *et seq.* by threatening to take actions that Defendants could not lawfully take.

221.    The Post-Filing Collection Letters violated N.C.G.S. § 75-50 *et seq.* by taking and/or threatening to take actions that Defendants could not lawfully take.

222.    The placing of the Eviction Fees on tenants' ledgers before filing or serving a complaint violates N.C.G.S. § 75-50 *et seq.*

31

223.    The placing of attorneys' fees in excess of fifteen percent (15%) of the amount owed by the tenant on tenants' ledgers violates N.C.G.S. § 75-50 *et seq.*

224.    The placing of the Eviction Fees on tenants' ledgers before being out of pocket any expenses violates N.C.G.S. § 75-50 *et seq.*

225.    The placing of the Complaint Filing Fee on tenants' ledgers before filing and serving a complaint for summary ejectment against the tenant violates N.C.G.S. § 75-50 *et seq.*

226.    Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law.

227.    Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by posting Eviction Fees or Complaint Filing Fees on tenants' ledgers before being able to do so as permitted by law.

228.    Defendants violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect Eviction Fees without a legal justification.

229.    Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, assessing, threatening to assess, and collect or attempting to collect Eviction Fees without a legal justification.

230.    Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, assessing, threatening to assess, and collect or attempting to collect Complaint Filing Fees

32

without a legal justification.

231.    Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, assessing, threatening to assess, and collect or attempting to collect an attorneys' fee in excess of fifteen percent (15%) of the amount owed by Plaintiff and Classes Members without a legal justification.

232.    Defendants' communications to Plaintiff and members of the Classes constituted "communications attempting to collect a debt" subject to the disclosure requirement of N.C.G.S. § 75-54(2).

233.    Defendants' violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means by representing that Plaintiff and Class Members owed Eviction Fees and Complaint Filing Fees before filing a complaint, as well as by representing that Plaintiff and Class Members owed attorneys' fees in excess of fifteen percent (15%) of the amount owed by the tenant.

234.    A violation of N.C.G.S § 42-46 constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 *et seq.*

235.    Defendants collected or attempted to collect from Plaintiff and members of the classes a charge, fee or expense incidental to the principal debt of the monthly rent owed, that was legally prohibited under N.C.G.S. 42-46, in violation of N.C.G.S. § 75-51(8), N.C.G.S. § 75-54, and N.C.G.S. §75-55 (2).

236.    Defendants' actions in violation of North Carolina's Unfair Debt Collection Act were willful.

237.    Plaintiff and each member of the Classes were injured by Defendants' actions

and are entitled to damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. §75-56.

238. Plaintiff and each member of the Classes were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

239. Plaintiff and each member of the Classes are also entitled to recover treble damages pursuant to this claim.

**FOURTH CAUSE OF ACTION**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C.G.S. § 75-1.1, *et seq.***
**(on behalf of all classes)**

240. All paragraphs of this complaint are incorporated herein as if fully restated.

241. At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

242. The conduct of Defendants as set forth herein is against the established public policy of the State of North Carolina; is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

243. Defendants' violations of the UDTPA include, but are not limited to, (a) assessing and attempting to collect Eviction Fees when such amounts were not owed; (b) assessing and attempting to collect Eviction Fees when such amounts are expressly prohibited by N.C.G.S. § 42-46; (c) assessing and attempting to collect Eviction Fees prior to filing or serving a complaint in summary ejectment; (d) assessing and attempting to collect Eviction Fees

prior to being awarded any such amounts by a North Carolina judge; (e) assessing and attempting to collect Eviction Fees after dismissing complaints in summary ejectments without prejudice; (f) failing to refund any portion of the Eviction Fees when a North Carolina magistrate judge orders costs to be assessed against Defendants; (g) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiff and each member of the classes; (h) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy of North Carolina and the express statutory provisions of N.C.G.S. § 42-46; (i) utilizing false representations and deceptive measures to collect or attempt to collect Eviction Fees which are unlawful; (j) undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff; and (k) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law.

244. Defendants' violations of the UDTPA include, but are not limited to, (a) assessing and attempting to collect Complaint Filing Fees when such amounts were not owed; (b) assessing and attempting to collect Complaint Filing Fees when such amounts are expressly prohibited by N.C.G.S. § 42-46; (c) assessing and attempting to collect Complaint Filing Fees prior to filing or serving a complaint in summary ejectment; (d) failing to refund any portion of the Complaint Filing Fees; (e) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiff and each member of the Classes as to attorney's fees and Complaint Filing Fees; (f) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy

35

of North Carolina and the express statutory provisions of N.C.G.S. § 42-46, N.C.G.S. § 6-21.2 by assessing an attorneys' fee in excess of fifteen percent of the amount owed by the tenant; (g) utilizing false representations and deceptive measures to collect or attempt to collect Complaint Filing Fees which are unlawful; (h) undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff and the tenants; and (i) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law with regard to assessing a Complaint Filing Fee before the complaint had been filed and served and assessing an attorney's fee in excess of 15% of the amount owed by Plaintiff and the tenants.

245.    The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiff and each member of the Classes.

246.    Plaintiff and members of the Classes suffered actual injury as a result of Defendants' unfair actions.

247.    Such injury consists of, but is not limited to emotional distress damages and money damages resulting from Defendants' demanding and obtaining fees and costs in excess of amounts allowed pursuant to North Carolina law from Plaintiff and each member of the Classes.

248.    Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

249.    Plaintiff and each member of the Classes have been damaged and are entitled to

recover treble damages and attorneys' fees incurred in this action.

## FIFTH CAUSE OF ACTION
### Petition for Declaratory Judgment N.C.G.S. § 1-253, *et seq.*
### (on behalf of all classes)

250.   All paragraphs of this complaint are incorporated herein as if fully restated.

251.   Plaintiff and the members of the classes file this Petition for a Declaratory Judgment under N.C.G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under such statute.

252.   Plaintiff and the members of the classes have an actual controversy with Defendants regarding the validity and enforceability of a portion of the Lease.

253.   The Lease states that, if Defendants file a summary ejectment lawsuit against a tenant, they may recover one of the three fees identified in N.C.G.S. § 42-46 (e) through (g) in addition to the Eviction Fees.

254.   Upon information and belief, every lease during the Relevant Time Period, including Plaintiff's Lease, contains this same provision.

255.   However, N.C.G.S. § 42-46(h)(3) stated (prior to the enactment of the Act) that "[i]t is contrary to public policy for a landlord to put in a lease or claim any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) of this section, and a reasonable attorney's fee as allowed by law."

256.   The Eviction Fees, described in the Lease, constitute a "fee for filing a complaint for summary ejectment" and are separate from and in addition to "the ones expressly authorized by subsections (e) through (g)."

257.   Under N.C.G.S. § 42-46(h)(4), "[a]ny provision of a residential rental agreement

37

contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable."

258.    Therefore, because Defendants' lease contains a provision that was void and unenforceable, Plaintiff and the members of the proposed Classes seek an order declaring Defendants' North Carolina leases to be void and unenforceable insofar as such leases provide for a fee other than the ones expressly authorized by N.C.G.S. § 42-46 (e) through (g).

259.    Plaintiff and the members of the proposed Classes have an actual controversy with Defendants resulting from Defendants' erroneous interpretation of the applicable law.

260.    It is established law in North Carolina that N.G.S.S. § 42-33 is "remedial in nature and will apply only where the parties' lease does not cover the issue of forfeiture of the lease term upon nonpayment of rent. Where the contracting parties have considered the issue, negotiated a response, and memorialized their response within the lease, the trial court appropriately should decline to apply these statutory provisions." *Charlotte Office Tower Associates v. Carolina SNS Corp.*, 89 N.C. App. 697, 701 (N.C. App. 1998).

261.    Defendants entered into written leases that cover the issue of forfeiture of the lease term upon nonpayment of rent with Plaintiff and the members of the proposed Classes.

262.    Therefore, because the parties have considered the issue, negotiated a response, and memorialized the response within a written lease, Plaintiff and the members of the proposed Classes seek an order declaring that N.C.G.S. § 42-33 is not applicable.

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(on behalf of all classes)**

263.    All paragraphs of this complaint are incorporated herein as if fully restated.

264.    In the Initial Collection Letters, Defendants made representations to Plaintiff, Class members as set forth in this complaint.

38

265. Those representations were false.

266. In the Post Filing Collection Letters, Defendants made representations to Plaintiff and Class members as set forth in this complaint.

267. Those representations were false.

268. On the tenant's ledgers, Defendants made representations to Plaintiff and Class members as set forth in this complaint.

269. Those representations were false.

270. When Defendants made these representations in the Initial Collection Letters, Post Filing Collection Letters, and on the Ledgers, Defendants knew these representations were untrue or they had a reckless disregard for whether they were true, or they should have known the representations were untrue.

271. Defendants intended to induce the Plaintiff and Class Members into relying upon these misrepresentations by paying the amounts falsely claimed to be due.

272. Defendants also knew that Plaintiff and Class Members were relying on the representations.

273. In reliance upon the representations, Plaintiff and Class Members paid Defendants when they did not owe additional fees, Eviction Fees, attorneys' fees or Complaint Filing Fees.

274. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class Members have been damaged as set forth in this complaint.

275. As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## SEVENTH CAUSE OF ACTION
### Breach of Contract
### (on behalf of all classes; in the alternative)

276.    All paragraphs of this complaint are incorporated herein as if fully restated.

277.    In the alternative, there existed a valid and enforceable lease between Defendants and Plaintiff and the putative Class Members.

278.    This lease, among other things, required Defendants to file and serve a complaint in summary ejectment before charging a Complaint Filing Fee, that the Complaint Filing Fee would be limited to the greater of $15 or 5% of the tenant's share of the rent for those whose rent is subsidized by a government entity, and that any attorneys' fees would be reasonable.

279.    However, as discussed herein, Defendants did not file or serve a complaint in summary ejectment before charging a Complaint Filing Fee, did not limit the Complaint Filing Fee to the greater of $15 or 5% of Plaintiff's and the Class Members' share of the rent, and the attorneys' fees charged were not reasonable.

280.    As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, incuding attorneys' fees as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the proposed Classes respectfully request that this Court:

1.    Assume jurisdiction over this action;

2.    Certify the Classes and appointing Plaintiff and their counsel to represent the classes;

3.    Issue a declaratory judgment that Defendants' actions as set forth herein violated

Case 1:19-cv-00349-LCB-JEP    Document 19    Filed 05/21/19    Page 40 of 43

the rights of Plaintiff and each member of the proposed Classes pursuant to N.C.G.S. § 75-54, or in the alternative N.C.G.S. § 75-1.1;

4.  Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiff and each member of the proposed Classes pursuant to N.C.G.S. § 75-55, or in the alternative N.C.G.S. § 75-1.1;

5.  Issue a declaratory judgment that Defendants' Standard Lease and any substantially similar residential lease agreement used by Defendants is contrary to N.C.G.S. § 42-46 and therefore void and unenforceable as against public policy;

6.  Issue a declaratory judgment that N.C.G.S. § 42-33 is inapplicable in every instance in which Defendants entered into a written lease agreement that addresses forfeiture of the lease term upon the tenant's nonpayment of rent with Plaintiff and the members of the classes;

7.  Award Plaintiff and each member of the proposed Classes compensatory damages in an amount to be determined at trial;

8.  Award Plaintiff and each member of the proposed Classes punitive damages amount to be determined at trial;

9.  Award Plaintiff and each class member a statutory penalty in the amount of no more than $4,000 for each violation of N.C.G.S. § 75-50 *et seq.*;

10. Award Plaintiff and each class member damages calculated pursuant to N.C.G.S. § 75-8 for each week that Defendants' illegal conduct occurred;

11. Award Plaintiff all statutory and actual damages to which she is entitled separate and apart from the proposed Classes in an amount in excess of $25,000.00;

12. Treble all damages resulting from a violation of N.C.G.S. § 42-46 in accordance

41

with N.C.G.S. § 75-1.1;

        13.     Award attorneys' fees to Plaintiff and members of the proposed Classes pursuant to N.C.G.S. § 75-16.1;

        14.     Tax the costs of this action to Defendants, or any of them;

        15.     Allow a trial by jury on all issues so triable; and

        16.     Grant Plaintiff and the members of the proposed Classes such other and further relief as the Court deems just and proper.

This the 21st day of May, 2019.

**WHITFIELD BRYSON & MASON LLP**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
Patrick M. Walllace
N.C Bar No.: 48138
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: 919.600.5000
Fax: 919.600.5035
scott@wbmllp.com
pat@wbmllp.com

**MAGINNIS LAW, PLLC**
Edward H. Maginnis
N.C. Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919.526.0450
Fax: 919.882.8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com

42

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel for Plaintiff hereby certifies that he has this day filed the foregoing document using the Courts CM/ECF filing service which will provide notice of the filing to all counsel of record via the CM/ECF email notification system.

This the 21st day of May, 2019.

**WHITFIELD BRYSON & MASON LLP**

*/s/ Scott C. Harris*
Scott C. Harris
N.C. Bar No. 35328
Patrick M. Wallace
N.C Bar No. 48138
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com

43